IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MONICA ESQUIVEL and KODY KRISTEN HURDLE,** | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. **3:22-CV-0556-L** |
| **MARCIA FUDGE, in her official capacity as the U.S. Secretary of Housing and Urban Development,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") (Doc. 18), filed December 16, 2022; Defendant's Cross Motion for Summary Judgment ("Motion") (Doc. 24), filed January 6, 2023; and Plaintiffs' Objections to Defendant's Summary Judgment Evidence (Doc. 30). After considering the Motions, briefs, admissible summary judgment evidence, objections, and applicable law, the court **grants** Defendant's Motion for Summary Judgment (Doc. 24); **denies** Plaintiffs' Motion for Summary Judgment (Doc. 18); **overrules** Plaintiffs' Objections to Defendant's Summary Judgment Evidence ("Objections") (Doc. 30); and **dismisses with prejudice** this action.

## I.      Background

In this removed civil action, Plaintiffs Monica Esquivel and Kody Kristen Hurdle (collectively, "Plaintiffs") contend that they are the fee simple owners of the real property located at 1938 Las Cruces Lane, Dallas, Texas 75217[*] ("the Property"), and that Defendant Secretary of

---

[*] More specifically described as:

the United States Department of Housing and Urban Development ("HUD") Marcia Fudge ("HUD" or "Defendant") unlawfully intends to foreclose and sell their Property to satisfy a reverse mortgage loan originated by a previous owner. *See* Def.'s Notice Removal (Doc. 1); Pls.' Original Pet. (Doc. 1-5). In their Original Petition ("Petition"), Plaintiffs sought a declaration that they are the fee simple owners of the Property and that the deed of trust held by HUD is void, as well as a temporary restraining order, preliminary injunction, and permanent injunction to enjoin Defendant from foreclosing on the Property. Pls.' Original Pet. 7-10.

### A.     Factual Background

The court now sets forth the facts upon which it relies to resolve the pending Motions and Objections, and applies the summary judgment standard as set forth in the following section of this opinion. Unless otherwise noted, the facts herein are undisputed.

This action involves HUD's lien as a result of a reverse mortgage on the Property, obtained by J.L. Garcia and Ellen Katherine Garcia, the former owners of the Property. Def.'s Summ. J. App. 9-18. The court begins with a brief overview of reverse mortgages before turning to the specific facts of this case. A Home Equity Conversion Mortgage ("HECM"), known as a "reverse mortgage," allows older homeowners to convert their accrued home equity into liquid assets while remaining in their home. 12 U.S.C. § 1715z-20(a); *Margolis v. James B. Nutter & Co.*, 808 F. App'x 230, 232 (5th Cir. 2020). "[T]he borrower receives either a lump sum, periodic payments, or a line of credit from a lender based on this accumulated equity." *Estate of Jones v. Live Well Fin., Inc.*, No. 1:17-cv-3105-TWT, 2017 WL 4176661, at *1 (N.D. Ga. Sept. 20, 2017). The loan

---

Being Lot 18, Block 2-6229 of Hillburn Park Addition, an Addition to the City Dallas, Dallas County, Texas, According to the Plat Thereof Recorded in Volume 18, Page 191, Map Record, Dallas County, Texas, Parcel No.: 00-0054-459-400-0000.

Pls.' Original Pet. 2-3 (Doc. 1-5).

**Memorandum Opinion and Order – Page 2**

amount of the HECM becomes due and payable when "a specific 'trigger' event occurs, such as the death of the borrower or the sale of the home." *Plunkett v. Castro*, 67 F. Supp. 3d 1, 6 (D.D.C. 2014); *see also* 12 U.S.C. § 1715z-20(j).

The HECM program is authorized by 12 U.S.C. § 1715z-20. "Congress, worried that this risk would deter lenders from entering the reverse mortgage market, created a mortgage-insurance program, administered by [HUD], as an incentive for lenders to provide reverse mortgages." *Estate of Jones*, 2017 WL 4176661 at *1 (citing *Bennet v. Donovan*, 703 F.3d 582, 585 (D.C. Cir. 2013)). "This insurance program protects lenders from financial loss if certain conditions are met." *Id*. A "private lender originates the loan through a First [HECM] Note and secures that note in a First Deed of Trust (the first mortgage)." *Bartolomeo USA, L.L.C. v. United States Dep't of Hous. & Urb. Dev.*, No. 21-10493, 2021 WL 5458117, at *1 (5th Cir. Nov. 22, 2021) (citing 12 U.S.C. § 1715z-20)). "The borrower executes a Second [HECM] Note and secures that note in a Second Deed of Trust (the second mortgage). The second mortgage becomes relevant if HUD makes payments instead of the private lender." *Id*. (citing 12 U.S.C. § 206.121(c)). To minimize the risk of continuing periodic payments that exceed the value of the home, the HECM program allows the original lender to transfer the First HECM Note and First Deed of Trust to HUD once the homeowner's "indebtedness reaches 98% of the maximum loan." *Id*. (internal citation omitted).

In this case, the original owners of the Property, Mr. and Ms. Garcia, entered into an HECM loan with the original lender, Reliance Mortgage Company ("Reliance"), secured by a lien on the Property. Def.'s Summ. J. App. 9-18. The Garcias and Reliance executed the First HECM Note and First Deed of Trust, which was recorded in Dallas County, Texas. *Id*. at 9-18, 25-29. The First HECM Note was guaranteed by HUD, which required the Garcias to execute a Second HECM Note, secured by the Second Deed of Trust, which in turn required the repayment of the loan to

HUD. Pls.' Summ. J. App. 20-3, Ex. 2. The Second HECM Note and Deed of Trust were also recorded in Dallas County, Texas. *Id*. Mr. Garcia died in 2004. *Id*. at 20-23, Ex. 22.

Beginning in 2004, the First HECM went through a series of assignments. Reliance first assigned the First HECM to Seattle Mortgage Company ("Seattle Mortgage") in 2004, and then on June 28, 2007, Seattle Mortgage assigned it to an unnamed entity. *Id.* at 20-4, 20-5, Exs. 3, 4. That assignment (the "Blank Assignment"), however, left blank the assignee's name and address. *Id*. at 20-5, Ex. 4. The Blank Assignment, dated June 28, 2007, states that "[Seattle Mortgage] [] does by these presents hereby grant, bargain, sell, assign, transfer, convey, set over, and deliver unto _, whose address is _, the following described of trust. . . ." *Id*. (underlines added for emphasis). The Blank Assignment occurred at the time that Bank of America acquired Seattle Mortgage's reverse mortgage business in 2007. Def.'s Summ. J. App. 86-87, 90-91, 99.

The next assignment in April 2009 states that the First HECM Note was held by "Bank of America N.A. as Successor by asset acquisition in Seattle Mortgage Company/Seattle Savings Bank," and assigned the Deed of Trust to HUD. Pls.' Summ. J. App. 20-6, Ex. 5. Then, a later assignment noted as "**Corrective**" (the "Corrective Assignment") was executed on March 29, 2012, in which Seattle Mortgage assigned the First HECM to Bank of America. *Id*. at 20-7, Ex. 6. The Corrective Assignment states that the recording was requested by Bank of America and is signed by a Vice President of Seattle Mortgage. *Id*.

By April 2009, the original loan balance had reached more than 98% of the maximum paid amount, rendering it transferable to HUD. Def.'s Summ. J. Br. 14. Bank of America did so, and it endorsed the First HECM Note and assigned the First Deed of Trust to HUD ("2009 Assignment"), prior to the Corrective Assignment execution in 2012. Pls.' Summ. J. App. 20-6, Ex. 5. The 2009

Assignment was properly recorded in Dallas County, Texas, and with it, HUD became the holder of the First HECM Note and Deed of Trust. *Id*.

By 2013, the Garcias had both passed away, which triggered the First HECM Note to be due and payable at that time. On February 16, 2016, HUD mailed the Garcias, or their heirs at the Property, a notice that the First HECM Note was due and payable, and that if no payment was made within 30 days, it would result in foreclosure proceedings. *Id*. at 20-9, Ex. 8. Having received no payment, HUD, through its agent, initiated foreclosure proceedings through the filing of *In Re: Order of Foreclosure Concerning 1938 Las Cruces Lane, Dallas, Texas 75217*, DC-20-04949 in the 160th Judicial District Court of Dallas County, Texas (hereinafter, "HUD's Lawsuit"). *Id*. at 20-10, 20-11, Exs. 9, 10. It ultimately received a default order granting the application for foreclosure. *Id*. After determining that the Second HECM Note and Second Deed of Trust were no longer needed, it recorded a release of lien on the Property. *Id*. at 20-15, Ex. 14.

After obtaining the default order for its foreclosure application, HUD sold the First HECM Note and Deed of Trust to a private bank and then repurchased it in 2017 and 2018 respectively. *Id*. at 20-14, 20-16, Exs. 13, 15. Before HUD could initiate foreclosure proceedings on the Property in 2018, having ownership of the First HECM Note again, an entity named RMDC, LLC ("RMDC"), sued HUD on behalf Ms. Garcia's heirs to challenge the validity of HUD's lien in the 95th Judicial District for the District Court of Dallas County, Texas. *See RMDC, LLC v. The Unknown Heirs of Joseph Lopez Garcia*, DC-20-05362; Def.'s Summ. J. App. 53-58. Before the state court could rule on the merits of the action, RMDC filed a notice of partial nonsuit, nonsuiting the claims against HUD. *Id*. at 60-62.

HUD then proceeded with foreclosure and filed a notice of default and foreclosure sale in the Dallas County Property Records, indicating that the foreclosure sale would occur on May 4,

2021. *Id*. at 73-75. Before the sale took place, RMDC brought a new action to quiet title, alleging that the First HECM Trust was unenforceable under the Texas statute of limitations and that the chain of assignments for the First HECM Deed of Trust was broken. *Id*. RMDC also requested an injunction to stop the foreclosure sale, which was denied. *Id*. After RMDC later filed a notice of *lis pendens* in the property records, HUD took no further action to proceed with the foreclosure, and the state court dismissed RMDC's action for want of prosecution. *Id*. at 80.

Sometime after that dismissal, Plaintiffs purchased the Property in December 2021 from Property Capital Investors, LLC, who received it from RMDC by way of a Special Warranty Deed with Vendor's Lien. Pls.' Summ. J. App. 20-17, Ex. 16.

### B.   Procedural History

In 2022, for the second time, HUD initiated foreclosure proceedings on the Property by posting a Notice of Default and Foreclosure sale at the Dallas County courthouse, setting the sale for March 1, 2022. Def.'s Summ. J. App. 82-84. A copy of the notice was mailed to Plaintiffs. *Id*. On February 28, 2022, Plaintiffs filed the Petition before the court herein, in the 116th Judicial District Court of Dallas County, Texas, DC-22-02169. Pls.' Original Pet. 1. On March 1, the 116th Judicial District granted Plaintiff's Temporary Restraining Order enjoining HUD from taking any action to sell the Property and otherwise engaging in any activity that would prevent Plaintiffs from the full use and enjoyment of the Property. TRO 2-3 (Doc. 1-6). The 116th Judicial District then transferred Plaintiffs' case to the 160th Judicial District Court of Dallas County. *See* Order Re: Transfer ("The court finds that [Plaintiffs' case] is related to [HUD's Lawsuit] previously pending in the 160th District Court and that the case should be transferred to the 160th District Court of Dallas County, Texas pursuant to [Local] Rule 1.06.") (Doc 1-11). On March 8, 2022,

HUD filed an answer in state court before timely removing it to federal court. Def.'s Notice Removal (Doc. 1).

On December 16, 2022, Plaintiffs moved for summary judgment on their request for declaratory judgment on two grounds: (1) a fatal break in the chain of assignments renders HUD's trust lien unenforceable; and (2) enforcement of the lien is barred under the applicable Texas statute of limitations. Pls.' Summ. J. Br. 1-2. Defendant filed a Cross Motion for Summary Judgment on January 6, 2023, along with its response to Plaintiffs' Motion and summary judgment appendix. The parties then filed their appropriate response and reply briefs to the Motion, Cross Motion (collectively, "the Motions"), and Plaintiffs' Objections to Defendant's Summary Judgment Evidence ("Objections") (Doc. 30). Plaintiffs then sought and received leave to file a sur-reply to Defendant's Motion, after the court determined that additional briefing would aid it in determining the issues the various motions presented. *See* Docs. 35, 36, 38. The court then granted the parties' Joint Motion to vacate the upcoming trial deadlines pending the court's review of the Motions. Docs. 43, 44. The court now determines that the Motions are ripe for review and determination.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the

nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes

over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23. "Whe[n], as here, parties have filed cross-motions for summary judgment, each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Engr's, Inc*., 395 F.3d 533, 538-39 (5th Cir. 2004).

## III.   Plaintiffs' Objections to HUD's Summary Judgment Evidence

As a threshold matter, the court addresses Plaintiffs' objections to HUD's summary judgment evidence. Raised in their Response to HUD's Motion, Plaintiffs object to: (1) the Declaration of Mr. William Collins ("Declaration") and its support for all of Defendant's Exhibits; (2) Exhibit 5, which is the letter from HUD's servicing contractor to Bank of America; (3) Exhibits B and C, which are business journal news articles; and (4) Exhibit D, a Form 8-K SEC filing for Bank of America.

### A.  Objections to the Declaration of Mr. William Collins

In response to Plaintiffs' Motion, and in support of its own Cross Motion, Defendant relies in large part upon the Declaration. Plaintiffs object to the Declaration and its related documents in the Appendix of Defendant's Summary Judgment Evidence (Doc. 27). Doc. 30 at 1. Specifically, they object to paragraph 2 of the Declaration "because it is overly broad and unsubstantiated as the Appendix includes documents that cannot be within the declarant's personal knowledge, or

within Defendant's business records." *Id*. Plaintiffs allude to the requirements set forth in Federal Rule of Evidence 803(6) for admission of hearsay evidence under the business record exception to the rule against hearsay. *Id*. They argue that Mr. Collins fails to establish how the exhibits could be within his personal knowledge or that he is the custodian of those records. *Id*. at 1-2. Thus, they assert, the Declaration and its referenced exhibits are not competent summary judgment evidence. *Id*. at 2.

In Response to Plaintiffs' Objections, Defendant argues that paragraph 2 of the Declaration is admissible because Mr. Collins is "the HUD Director of Servicing and Loss Mitigation within the Office of Single-Family Asset Management," and in that role, he "runs the servicing center responsible for the nationwide portfolio of single-family mortgage loans, including the Home Equity Conversion Mortgage (HECM) program." Doc. 33 at 1-2. It argues that Mr. Collins's personal knowledge and status as custodian are apparent from his role at HUD. Doc. 33 at 2 (citing *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) ("Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records.")). HUD further argues that the Declaration:

> explains that Exhibit 5 (along with the other documents attached to his declaration) are true and correct copies of records kept in the ordinary course of business of HUD, was made at or near the time of the event in question or otherwise received by HUD and placed into HUD's business records, and it was the ordinary course of business of HUD for an employee or representative with knowledge of the event recorded to make or keep the record and for HUD to then keep and maintain that records. (Doc. 27 at App. 006 ¶ 2.)

Doc. 33 at 4. Defendant also states that Plaintiffs general objections to the 13 related documents fail to show their inadmissibility by failing to identify the specific evidence and the specific grounds for their objections. Doc. 33 at 3.

**Memorandum Opinion and Order – Page 10**

In his Declaration, Mr. Collins states:

1. I am the Director of Servicing and Loss Mitigation within the Office of Single-Family Asset Management at the U.S. Department of Housing and Urban Development (HUD). In this capacity I am also the Director of HUD's National Servicing Center 9NSC) located in Oklahoma City, Oklahoma. The NSC is responsible for the portfolio of single-family mortgage loans owned and held or insured by HUD/Federal Housing Administration (FHA).

2. I have personally reviewed the documents attached to this declaration at Exhibits 1-13. I either have personal knowledge regarding them or I have confirmed via personal observation that they are what they purport to be as indicted herein. These documents are true and correct copies of records kept in the ordinary course of business of HUD/FHA. The records were made at or near the time of the vent in question, or they were otherwise received by HUD/FHA and placed within the business records of HUD/FHA. It was the ordinary course of business of HUD/FHA for an employee or representative with knowledge of the act or event recorded to make or keep the record, and it was the ordinary course of business of HUD/FHA to keep and maintain such records.

Def.'s Summ. J. App. 6-7. Mr. Collins ended the Declaration by stating "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief." *Id*. at 7.

Rule 56 of the Federal Rules of Civil Procedure states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declare it is competent to testify on the matters stated." Fed. R. Civ. P. 56(a)(4). As "this exception hinges on the trustworthiness of the records," the court's predominate inquiry into the Declaration is to its reliability and trustworthiness as an authentication of Defendant's summary judgment evidence. *See United States v. Isgar*, 739 F.3d 829, 839 (5th Cir. 2014).

First, the court notes that the Declaration does not make clear that Mr. Collins, as the HUD Director of Servicing and Loss Mitigation within the Office of Single-Family Asset Management, is responsible for management of the HECM program. Although the Declaration does not describe in detail what programs are included in the Office of Single-Family Asset Management, that omission is not fatal. Defendant explains in its response that Mr. Williams' department includes

the reverse-mortgage program, and with this explanation, the court determines that there is no confusion as to how Mr. Williams has personal knowledge of the documents described in his Declaration.

As for the substance of the Declaration, it sets forth the necessary facts for the court to find that it and the exhibits that it supports are competent summary judgment evidence. The Declaration closely follows the requirements of Rule 803(6), by stating that: (1) the records made at or near the time of the events in question; (2) were kept in the ordinary course of business for HUD; and (3) it was its regular activity to make the record by the representative with knowledge of the activity. Mr. Collins signed the Declaration under penalty of perjury.

Finally, Plaintiffs failed to meet the burden imposed by the last clause of Rule 803(6), requiring them to show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. They failed to establish that the court cannot rely on the Declaration, or that related Exhibits 1-13 are the result of methods or circumstances that indicate a lack of trustworthiness. For these reasons, the court concludes that the Declaration is admissible at this stage. Accordingly, the court **overrules** Plaintiffs' objections as to the Declaration and its related exhibits.

### B. Plaintiffs' Objections to Defendant's Exhibit 5

Next, Plaintiffs object to Defendant's Exhibit 5 (Def.'s Summ. J. App. 34-35), asserting that the Bank of America correspondence is "hearsay, contains hearsay within hearsay, and it is not evident how the correspondence would be within declarant's personal knowledge or qualifies as a business record." Doc. 30 at 2 (citing Fed. R. Evid. 801). They also argue that Exhibit 5 is not the best evidence of the facts alleged, citing Federal Rule of Evidence 1002, and that it does not function as proper support for the proffered statements under Federal Rule of Evidence 401. *Id.*

**Memorandum Opinion and Order – Page 12**

Defendant responds, asserting that Exhibit 5—a 2009 letter from HUD's servicing contractor to Bank of America—is explained in the Declaration to be a business record. Doc. 33 at 3. As the Declaration is competent summary judgment evidence, so too are the documents, like Exhibit 5, properly authenticated for the purpose of this Motion. *Id*. Therefore, Defendant contends, Exhibit 5 is admissible. *Id*. at 5.

Proffered evidence in a summary judgment motion need not be in admissible form, but its content must be admissible. *See Celotex Corp.*, 477 U.S. at 324. Under the Federal Rules of Evidence, hearsay is defined in part as any statement "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Unless subject to an exception, hearsay is not admissible. Fed. R. Evid. 802.

Exhibit 5 is a letter from C&L Service / Morris Griffin representative, who is a HUD Servicing Contractor. Def.'s Summ. J. App. 35. The letter, dated April 22, 2009, and addressed to Bank of America, states "[w]e have approved your request for assignment of the subject mortgage," and the Property is noted in its heading. *Id*. The letter directs Bank of America to "proceed with filings [its] claim for insurance benefits. Kindly forward the original recorded assignment as soon as it becomes available so we may proceed with title approval." *Id*.

The statements in the letter are hearsay, as they are offered for the truth of the matter asserted to show that the Property mortgage was assigned from Bank of America to HUD in 2009. This hearsay statement, however, is admissible under Rule 803(6)'s exception for business records, as addressed above by the court. These statements are the type that HUD would be able to authenticate at trial through a witness, as it has done through the Declaration. As such, the letter is competent summary judgment evidence. The court, therefore, **overrules** Plaintiffs' objections to the hearsay statements contained in Exhibit 5.

### C.  Plaintiffs' Objections to Exhibits B and C

Plaintiffs object to Exhibit B (Def.'s Summ. J. App. 85-88) as incompetent summary judgment evidence because, as a business journal article, it "is not authenticated, is hearsay, and contains hearsay within hearsay," and is not the best evidence. Doc. 30 at 2. They also object to Exhibit C (Def.'s Summ. J. App. 89-92) for the same reasons. *Id*. at 2-3.

As for the objections related to the business journal articles, Defendant continues to assert that Plaintiffs failed to state their objections with sufficient specificity to overcome the presumption of admissibility. Doc. 33 at 5. Defendant also argues that because the documents are hearsay, the court may take judicial notice of the business journal articles if considered "for the limited purpose of showing what facts were disclosed to the public at the time of the articles." *Id*. at 6. Finally, Defendant asserts that because evidence submitted to support summary judgment need not be presented in a form for admissibility at trial, the exhibits at issue could be "be reduced to admissible evidence at trial via written or oral testimony by someone with knowledge of Bank of America's asset acquisition of Seattle Mortgage's reverse mortgage business." Doc. 33 at 6-7.

Under Federal Rule of Evidence 201, a district court may take judicial notice of facts that are "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2); *see also Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 255 (5th Cir. 2021). A court has the power to take judicial notice of the coverage and existence of newspaper and magazine articles, as well as the fact that the market is aware of information contained in news articles. *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (citing *Jackson v. Godwin*, 400 F.2d 529, 536 (5th Cir. 1968)).

Exhibits B and C are copies of online articles from Reuters and the Sacramento Business Journal, respectively, describing the acquisition of Seattle Mortgage's reverse mortgage business by Bank of America. Defendant offers these articles to show that the transaction was a complete acquisition of the reverse mortgages held by Seattle Mortgage to Bank of America. As these articles are published online from two news organizations whose accuracy has not been called into question, and because the articles present facts that are generally known, the court can take judicial notice of them under Federal Rule of Evidence 201. For these reasons, the court **overrules** Plaintiffs' objections to Defendant's Exhibits B and C.

### D.  Plaintiffs' Objections to Exhibit D

Finally, Plaintiffs object to Exhibit D (Def.'s Summ. J. App. 93-99), a Form 8-K SEC filing for Bank of America, because it: (1) is not authenticated and there is insufficient information to conclude that it was the final form submitted to the SEC; (2) contains hearsay; and (3) is not the best evidence. Doc. 30 at 3. In response, Defendant re-urges the same arguments that Plaintiffs failed to allege any objections with sufficient specificity, and that the document is in an admissible form for summary judgment evidence. Doc. 33 at 6-7.

Exhibit D is a Form 8-K used for reporting to the United States Securities and Exchange Commission. Def.'s Summ. J. App. 93-99. In relevant part, the form includes the following statement: "[i]n addition, [Bank of America] closed in late June on the purchase of Reverse Mortgage of America, which will significantly increase Bank of America's offerings of reverse mortgages to seniors." *Id*. at 99.

Like Exhibit 5 above, this letter is hearsay because it is offered for the truth of the matter asserted—that Bank of America acquired the reverse mortgages—but is admissible under the Rule 803(6) exception for business records. For this reason, the court finds that Exhibit D is competent

summary judgment evidence, and, accordingly, the court **overrules** Plaintiffs' objections to it. Nevertheless, to the extent that Defendant's exhibits contain inadmissible statements of fact or unsupported legal conclusions, the court will not consider those statements. *See Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the inadmissible portions of a challenged affidavit). If any portions of Mr. William's Declaration or the related Exhibits are clearly inadmissible hearsay or lack a basis of personal knowledge, or generally fail to satisfy the admissibility requirements under the Federal Rules of Evidence, the court disregards such statements. *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012).

Finally, to the extent that Plaintiffs' evidentiary objections argue that Defendant's exhibits are not the best evidence of the facts alleged, pursuant to Federal Rule of Evidence 1002, those objections are **overruled**. The Best Evidence Rule does not apply before trial because it "comes into play only when the terms of a writing are being established, not when a witness's testimony is based on personal knowledge." *Kiva Kitchen & Bath Inc. v. Capital Distrib. Inc.*, 319 F. App'x 316, 322 (5th Cir. 2009) (citations omitted).

Having overruled all of Plaintiffs' objections to Defendant's evidence, the court now considers the merits of the summary judgment motions before it.

## IV.   Defendant's Motion for Summary Judgment

Defendant moves for summary judgment, asserting that there is no genuine dispute of material fact and thus it is entitled to judgment as a matter of law because it can enforce the foreclosure provisions in the First HECM Note. *See* Def.'s Summ. J. Br. It argues that Plaintiffs' suit is in essence a quiet title action brought against the federal government under the Declaratory Judgment Act. *Id*. at 20. Thus, Defendant argues it is entitled to judgment as a matter of law

**Memorandum Opinion and Order – Page 16**

because: (1) Plaintiff cannot establish, or raise a genuine dispute of material fact, as to the elements of a quiet title action; and (2) in the alternative, that it is entitled to judgment because its evidence shows that it can foreclose as it possesses the original First HECM Note. *Id.* at 24. Defendant further argues that Plaintiffs have failed to demonstrate or present evidence showing a genuine dispute of material fact that its lien is not valid. *Id.* at 27.

### A. Federal Declaratory Judgment

Plaintiffs filed this case in state court, seeking "Declaratory Judgment/Remove Cloud on Title" and injunctive relief. Pls.' Original Pet. 6-8. Defendant timely removed this action seeking declaratory judgment to federal court. *See* Doc. 1.

When a declaratory judgment action is filed in state court first and is then removed to federal court, it is "converted to one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (citing *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir. 1984)). The Declaratory Judgment Act ("Act") allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201. Because the Act does not create a substantive cause of action, the availability of declaratory judgment depends upon the existence of an underlying judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

### B. Discussion and Analysis of Defendant's Summary Judgment Arguments

Review of the parties' briefing and arguments reveals that before the court can resolve this issue, it must first determine the legal consequence of the Blank Assignment from Seattle

Mortgage to Bank of America. Both parties' argument center around the legal effect of the Blank Assignment, with HUD asserting that the defect was cured by the later Corrective Assignment, while Plaintiffs contend that the Corrective Assignment itself was fatally defective, thereby breaking the chain of title and rendering HUD's lien void.

    1.   <u>Discussion of Whether There is an Unbroken Chain of Title</u>

Plaintiffs argue that Defendant cannot show that it possesses a valid lien because there is a fatal break in the chain of assignment of the First Deed of Trust. Pls.' Summ. J. Br. 2. They contend that when Bank of America "executed an assignment of the deed of trust [of the HECM], it did not hold the rights to that deed of trust." *Id*. Without a valid chain of assignments from the original mortgagee, they argue that HUD cannot enforce the deed of trust lien against Plaintiffs' home. *Id*.

The parties' contentions focus on the Blank Assignment that purported to transfer the First HECM Note from Seattle Mortgage to Bank of America on July 9, 2007. Plaintiffs argue that the blank portions of the Blank Assignment—the two spaces of " , " where the assignee name and address appear to have been intended—render the Blank Assignment void as a matter of law because that instrument did not assign any rights to Bank of America.

Defendant argues that Seattle Mortgage and Bank of America executed the Corrective Assignment in 2012 that cured the error. Doc. 31 at 8-9. It contends that leaving the assignee name blank was an immaterial correction, and therefore the two financial institutions fixed the flaw as required under Section 5.028(c) of the Texas Property Code, which sets forth the requirements for an instrument making an immaterial correction. *Id*. at 5. Defendant cites *Ainsworth v. Wells Fargo Home Mortg., Inc.*, No. 3:14-CV-1942-M, 2017 WL 3394587, at *6 (N.D. Tex. May 30, 2017), R&R adopted, 2017 WL 3382664 (N.D. Tex. Aug. 7, 2017), and *AIC Mgmt. Co. v. AT&T Mobility, LLC*, No. 01-16-00896-CV, 2018 WL 1189865, at *9 (Tex. App.—Houston [1st Dist.] 2018, pet

denied), as support for its assertion that adding an assignee is an immaterial correction. *Id.* at 9-10. Defendant further asserts that Seattle Mortgage and Bank of America substantially complied with the requirements in Section 5.028. *Id.* It points out that the face of the Corrective Assignment shows that it was requested by Bank of America, signed by an Assistant Vice President at Seattle Mortgage, and lists the "same deed of trust holder, lender/beneficiary, borrower, date of deed of trust, loan amount, deed of trust recording information, and property legal description as the original 2007 assignment." *Id.* at 11 (citing Pls.' Summ. J. App. Ex. 6). The Corrective Assignment was then properly recorded in the Official Public Records for Dallas County, Texas. *Id.* at 5 (citing Pls.' Ex. 6). Finally, Defendant contends that even if the Corrective Assignment fails to meet every requirement set forth in Section 5.028, it substantially complies with the statute, if not literally, under Texas Property Code § 5.031 and thus still has its curative effect. *Id.* at 9-10.

Plaintiffs argue that a correction that adds an assignee is a material correction, and therefore must be considered under Section 5.029. Doc. 35 at 1-2. They point to *AIC Management* as finding that the substitution of a grantee was a material change, and that the Corrective Assignment fails to meet Section 5.029's requirements, too. *Id.* at 2. Even if the court applies Section 5.028, Plaintiffs argue that the Corrective Assignment fails to meet that standard because it does not "disclose in the instrument the basis for the person's personal knowledge of the facts relevant to the correction." *Id.* at 2-3 (citing Tex. Prop. Code § 5.028). Further, Plaintiffs argue that the cases Defendant relies upon "simply got it wrong" when those courts applied the substantial compliance standard set forth in Section 5.031 to a corrective instrument recorded after September 1, 2011. *Id.* at 2.

*a. Material or Immaterial Correction*

First, the court must determine whether to apply Section 5.028 or 5.029 to the Corrective Assignment. In other words, the court must determine whether the Corrective Assignment made a material or an immaterial change. Under either statute, a properly executed corrective instrument is effective as of the effective date of the original imperfect instrument, serves as prima facie evidence of the facts stated in the correction instrument, is presumed to be true, and serves as notice to a subsequent buyer of the facts stated in the corrective instrument. Tex. Prop. Code Ann. § 5.030(a). "A correction instrument replaces and is a substitute for the original instrument." *Id*. at § 5.030(b).

*AIC Management* addressed whether a change in the grantee constituted a material correction. *AIC Mgmt. Co*, 2018 WL 1189865, at *7. There, because the corrective instrument sought to change the grantee's identity, it was a material correction that must comply with Section 5.029. *Id*. (citing Tex. Prop. Code Ann. § 5.029). Although that statute does not expressly contemplate a change in the grantee identity, it employs the term "including," before its enumerated list material corrections. *Id*. Generally, "includes" and "including" are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." Tex. Gov't Code § 311.005(13) (cleaned up); *AIC Mgmt. Co.*, 2018 WL 1189865, at *7. Thus, the court concluded that a correction that named a new grantee, thus giving that grantee new legal rights, constituted a material change that required the parties to comply with Section 5.029. *Id*.; *see also Offord v. Carson*, No. 01-19-00815-CV, 2021 WL 3358023, at *9 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

Here, it is undisputed that the Blank Assignment left blank the place where it should have identified Bank of America as the assignee. The Blank Assignment, in pertinent part, states that

"[Seattle Mortgage] [] does by these presents hereby grant, bargain, sell, assign, transfer, convey, set over, and deliver unto _, whose address is _, the following described deed of trust . . . ." Pls.' Summ. J. App. 20-5, Ex. 4 (underlines added for emphasis). The Blank Assignment's defect was the blank space where the grantee's name and address should have been included, and appears to be a typographical error, rather than an intention by Seattle Mortgage to execute an assignment without an assignee. This is particularly true when taken in context, as this instrument was executed as the result of Bank of America acquiring Seattle Mortgage's reverse mortgage department as a whole.

Although a scrivener's error, this failure had the effect of not naming an entity or person to which it assigned the First HECM Note. The Corrective Assignment, then, named Bank of America as the recipient of those assigned rights. The Corrective Assignment repeats all of the information found in the Blank Assignment, describing the Note, the land description, the original parties, and the recording of the subsequent instruments in Dallas County, Texas. As the Corrective Assignment had the effect of assigning legal rights to an entity not previously identified in the Blank Assignment, the court determines that the correction was material. Accordingly, Corrective Assignment must satisfy the requirements set forth under Section 5.029.

> b. *Requirements for a Material Correction Pursuant to Section 5.029*

A material correction in a corrective instrument is governed by Section 5.029. That statute provides in pertinent part that an instrument to correct a material error must be: "(1) executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct, []; and (2) recorded in each county in which the original instrument of conveyance that is being corrected is recorded." Tex. Prop. Code Ann. § 5.029(b). "Thus, an instrument intended to correct a material mistake must be executed by each party to the original transaction, or by an

appropriate alternate, and recorded in the relevant county to be a valid 'substitute for the original instrument.'" *Broadway Nat'l Bank v. Yates Energy Corp.*, 631 S.W.3d 16, 22 (Tex. 2021) (citing Tex. Prop. Code Ann. § 5.030(b)).

Plaintiffs contend that should the court evaluate the Corrective Assignment under Section 5.029, it also fails to meet the statute's requirements because both parties to the original instrument—Bank of America and Seattle Mortgage—did not sign the Corrective Assignment. Further, Plaintiffs argue that Section 5.031's permission for substantial compliance with a corrective instrument is inapplicable here.

The court agrees with Plaintiffs that Section 5.031 permitting substantial compliance with Sections 5.028 and 5.029 is not applicable to corrective instruments recorded after September 1, 2011. "The statute provides that 'substantial compliance' is sufficient to effectuate a correction instrument made prior to the statute's effective date of September 1, 2011. *See* Tex. Prop. Code § 5.031. The statute is silent as to whether substantial compliance is adequate for instruments filed after the effective date, when parties to an attempted correction would be on notice of the statutory requirements." *Tanya L. McCabe Tr. v. Ranger Energy, LLC*, 531 S.W.3d 783, 798 n.20 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also Lockhart v. Chisos Mins., LLC*, 621 S.W.3d 89, 110 (Tex. App.—El Paso 2021, pet. denied) (applying the standard for substantially complies to a corrective instrument executed prior to September 1, 2011, and finding that substantial compliance did not apply to a second corrective instrument executed in 2014).

Here, the Corrective Assignment was executed on April 4, 2012, which is after September 1, 2011. Thus, Section 5.031's standard for substantial compliance does not apply to the Corrective Assignment. Accordingly, Defendant must establish that it complied fully—not just substantially—with the requirements set forth in Section 5.029. There is no doubt that the

Corrective Assignment satisfies the second prong requiring that it be recorded in each county in which the original instrument was recorded; the Corrective Assignment was plainly recorded in Dallas County, Texas. The parties contest, however, whether the Corrective Assignment was properly "executed by each party to the recorded original instrument."

Looking first to Section 5.029's textual requirements, it states that the corrective instrument must be "executed by each party" without setting forth what renders the instrument "executed." Generally, a party may execute a legal document without signing it. Texas courts have explicitly rejected the argument that "execute" when used in Texas statutes means "to sign." *Gaskins v. Navigator Oil & Mins., Inc.*, 670 S.W.3d 391, 405 (Tex. App.—Eastland 2023, pet. granted). An agreement need not be signed by all parties to the agreement to be effective unless the agreement itself requires signatures as a condition of mutual assent. *Mid-Continent Cas. Co. v. Global Enercom Mgmt.*, 323 S.W.3d 151, 157 (Tex. 2010). Black's Law Dictionary defines "execute" as "to perform or complete (a contract or duty) . . . to change (as a legal interest) from one form to another . . . to make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." Black's Law Dictionary 467 (11th ed. 2019).

Here, the court determines that both Seattle Mortgage and Bank of America, as the parties to the Blank Assignment, properly executed the Corrective Assignment as required by Section 5.029. Seattle Mortgage executed the Corrective Assignment through the signature of an Assistant Vice President. The text of the Corrective Assignment itself does not require the signature of the assignee, but instead states that "the undersigned has caused this Assignment of Deed of Trust to be executed on 3/29/2012." Pls.' Summ J. App. 20-7, Ex. 6. On the face of the document, Bank of America requested the instrument to be created but did not sign it. These facts satisfy the definition of "execute" as to bring a legal document into its final, legally enforceable form. Further, there

was no confusion between the two financial institutions as to whom was the holder of the Blank Note, as evidenced by the fact that Bank of America requested the Corrective Assignment in 2012, and Seattle Mortgage complied. Importantly, neither party raises a fact issue as to whether Seattle Mortgage and Bank of America intended to execute the Corrective Assignment. Rather, the undisputed facts show the opposite, that is, Seattle Mortgage intended to assign Bank of America all of its reverse mortgage assets, including the First HECM Note, as part of its sale of the reverse mortgage division to Bank of America.

Taken as a whole, these facts allow the court to make a reasonable inference that both financial institutions intended the Corrective Assignment to be executed without the signatures of both, and behaved as though the Corrective Assignment was properly executed. Thus, the court finds that both parties to the Blank Assignment executed the Corrective Assignment that satisfies the requirements of Section 5.029 for a corrective instrument. Accordingly, the Corrective Assignment renders the Blank Assignment to be valid assignment of the First HECM Note to Bank of America in 2009.

Moreover, even if the Corrective Assignment did not comply with the letter of the law in Section 5.029, Plaintiffs have not shown or raised a genuine dispute of material fact as to whether that failure rendered all future note assignments void. That the Corrective Assignment failed to comply with Section 5.029 does not necessarily render the assignment void. *Gaskins*, 670 S.W.3d at 403 (citing *Lockhart*, 621 S.W.3d at 110). "Under [S]ection 13.001, '[a] conveyance of real property or an interest in real property . . . is void as to' a bona fide purchaser 'unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.'" *Broadway Nat'l Bank*, 631 S.W.3d at 26 (quoting Tex. Prop. Code § 13.001(a)). When a faulty assignment is accompanied by other evidence that a subsequent purchaser had notice of the

changed instrument, the instrument is not found to be wholly ineffective. *Yates Energy Corp. v. Broadway Nat'l Bank*, No. 04-17-00310-CV, 2022 WL 3047107, at *7 (Tex. App.—San Antonio 2022, pet. denied). Evidence that prior instruments were properly recorded provides constructive or actual notice of the lien to subsequent buyers. *Id.* (finding that evidence that copies of the recorded instrument that were mailed to a party was actual notice of the instrument and thus the corrective instrument effectively imparted notice on a subsequent purchaser).

Here, the prior instruments that recorded the Note and subsequent assignment in Dallas County gave constructive or actual notice of the lien. Plaintiffs do not raise any fact issues related to Defendant's acknowledgment of the instrument or the multiple Note transfer instruments that have been recorded in Dallas County, Texas. Therefore, Plaintiffs fail to set forth an argument or raise a genuine dispute of material fact as to whether the various notes assigning the First HECM Note to Bank of America is void. At best, Plaintiffs argue that the failings of the Blank Assignment and Corrective Assignment render the First HECM Note voidable, but not summarily void as a matter of law. Therefore, the court determines that Defendant has shown an unbroken chain of title.

Plaintiffs only point to technical flaws in these instruments in an attempt to invalidate one assignment and thus break the chain of title. While the court is sympathetic to their concerns regarding HUD's foreclosure action, Plaintiffs failed to demonstrate or raise a genuine dispute of material fact to support their claim that these defects broke the chain of title.

2.  HUD's Argument Regarding a Valid and Enforceable Lien on the Property

Having determined that the Corrective Assignment cured the defect in the Blank Assignment, rendering an unbroken chain of title from the Reliance to HUD, the court can now

resolve the merits of HUD's argument that Plaintiffs have failed to demonstrate or raise a genuine dispute of material fact as to the validity and enforceability of its lien on the Property.

When a litigant seeks a declaratory judgment that he or she is the rightful property owner, that the deed of trust and assignments are void, and that defendants have no right to a property, the court construes those claims as that for quiet title and injunctive relief. *See Carrie v. JPMorgan Chase Bank, N.A.*, No. 3:14-CV-3756-K, 2015 WL 11120991, at *3 (N.D. Tex. June 29, 2015), R&R adopted, No. 3:14-CV-3756-K, 2015 WL 11120992 (N.D. Tex. July 29, 2015) (analyzing plaintiff's requests for declarations that an agreement is void, that she owned the property in fee simple, and that the assignments of the deed of trust are void as an action to quiet title). Texas law governs this matter, and Texas courts consider a quiet title claim as one that seeks to "remove cloud from title," which requires the plaintiff to show the invalidity of a defendant's claim to the property. *Lance v. Robinson*, 543 S.W.3d 723, 738 (Tex. 2018) (internal quotation omitted). A "plaintiff in a quiet-title suit 'must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove.'" *Id*. at 739 (quoting *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)).

"Under Texas law, to prevail in a suit to quiet title, the plaintiff must prove: (1) his right, title, or ownership in real property; (2) that the defendant has asserted a 'cloud' on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid, would affect or impair the property owner's title; and (3) that the defendant's claim or encumbrance is invalid." *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 436 (5th Cir. 2014).

HUD argues that Plaintiffs cannot prevail on the third element of a quiet title action because HUD has a valid and enforceable lien on the Property. It asserts that its lien is valid because (1)

HUD has a clear chain of title to the first HECM Mortgage; and (2) it is the last entity to whom it was assigned in the Dallas County property records. It contends that the record demonstrates that an unbroken chain of note assignments led from the original mortgage to the Note now assigned to HUD. As the party seeking summary judgment, HUD has the initial burden of an entitlement to judgment as a matter of law before the burden shifts to Plaintiffs to come forward with evidence to show that there is a genuine issue of fact. *See Fontenot*, 780 F.2d at 1194.

The court has already determined that the evidence demonstrates a clear chain of title to the First HECM Mortgage, and that the last assignment of that Note was to HUD, as recorded in the Dallas County, Texas property records. Pls.' Summ. J. App. 20-14, Ex. 13. Accordingly, HUD has demonstrated that it has a valid and enforceable lien on the Property, and it is entitled to judgment as a matter of law.

### 3. HUD's Alternative Argument Regarding Possession of the First HECM Note

In the alternative, HUD argues that it can foreclose on the Property through enforcement of the lien because it possesses the original First HECM Note. The court need not address Defendant's alternative argument, as it has already determined that HUD has a clear chain of title on the Property through the First HECM Mortgage, and thus has a valid and enforceable lien. Thus, the court **grants** Defendant HUD's Cross Motion for Summary Judgment.

## V.   Plaintiffs' Motion for Summary Judgment

As noted, Plaintiffs moved for summary judgment on their claim for declaratory judgment, arguing that a fatal break in the chain of assignments rendered the deed of trust unenforceable and that HUD's lien is unenforceable under Texas law, which they contend should apply to the interpretation of the First HECM Mortgage. Pls.' Summ. J. Br. 2. As the court addressed at length herein, Plaintiffs' contentions related to the Corrective Assignment are incorrect as a matter of

law. Having determined that Defendant is entitled to judgment as a matter of law, the court will deny Plaintiffs' Motion for Summary Judgment on its claims, as any other result would be repugnant to the determinations and rulings already made.

## VI.   Exhibits Under Seal

In its Order (Doc. 23) of December 21, 2022, the court denied Plaintiffs' Unopposed Motion to File Summary Judgment Exhibits Under Seal (Doc. 22). The court, however, did not order the clerk of court to unseal the exhibits attached to the motion. The court therefore **directs** the clerk of court to **unseal** the exhibits attached to Document 22.

## VII.   Conclusion

For the reasons herein explained, there is no genuine dispute of material fact regarding Plaintiffs' claim for a declaratory judgment. Because HUD has a valid and enforceable lien on the Property, it is entitled to judgment as a matter of law on Plaintiffs' request for a declaratory judgment that they are the fee simple owner of the Property and that the deed of trust held by HUD is void. The court **grants** Defendant HUD's Cross Motion for Summary Judgment (Doc. 24); **denies** Plaintiffs' Motion for Summary Judgment (Doc. 18); **overrules** Plaintiffs' Objections to Defendant's Summary Judgment Evidence (Doc. 19); **denies** Plaintiffs' request for declaratory judgment; and **dismisses with prejudice** this action. In accordance with Rule 58 of the Federal Rules of Civil Procedure, judgment will issue by separate document.

**It is so ordered** this 31st day of August, 2023.

Sam A. Lindsay
United States District Judge